**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:26-CV-21444-WILLIAMS/LETT**

**CHANEL, INC.,**

Plaintiff,

v.

**NORDSTFCMRCAK.COM a/k/a**
**ONLINESTOREC.SHOP a/k/a**
**LASTCHANCEO.SHOP,**

Defendant.
_______________________________________/

## REPORT AND RECOMMENDATIONS

THIS MATTER is before the Court upon the Honorable Kathleen M. Williams' Paperless Order Referring Motion to Magistrate Judge, referring Plaintiff Chanel, Inc.'s Motion for Entry of Default Final Judgment Against Defendant (the "Motion") [ECF No. 14] to the Undersigned for a report and recommendation. *See* ECF No. 15. Having reviewed Plaintiff's Motion, the record, and relevant legal authorities, for the reasons provided herein, it is recommended that Plaintiff's Motion for Default Final Judgment be **granted**.

## PLAINTIFF'S CLAIMS

Plaintiff filed this action against Defendant on March 4, 2026. *See* Compl., ECF No. 1. Plaintiff alleges that "Defendant is an individual, business entity of unknown makeup, or an unincorporated association who, upon information and belief, either resides and/or operates in a foreign jurisdiction . . . ." *Id.* ¶ 7. Defendant operates

Internet based e-commerce stores operating under the seller names nordstfcmrcak.com, onlinestorec.shop, and lastchanceo.shop (the "E-commerce Store Names"). *Id.* at 1. Plaintiff owns various trademarks registered on the Principal Register of the United States Patent and Trademark Office as shown in the table below (the "Chanel Marks"). *See id.* ¶ 14.

| **Trademark** | **Registration Number** | **Registration Date** | **Classes/Goods** |
|---|---|---|---|
| CHANEL | 0,626,035 | May 1, 1956 | IC 018 - Women's Handbags |
| | 1,314,511 | January 15, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,347,677 | July 9, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,733,051 | November 17, 1992 | IC 018 - Leather Goods; Namely, Handbags, Wallets, Travel Bags, Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and Garment Bags for Travel |
| | 1,734,822 | November 24, 1992 | IC 018 - Leather Goods; Namely, Handbags, Wallets, Travel Bags, Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty |

The Chanel Marks are well-known and serve "as symbols of [Plaintiff's] quality, reputation, and goodwill." *Id.* ¶¶ 15-17. The Chanel Marks have been commercially used for a prolonged period of time and have never been assigned or licensed to Defendant. *Id.* ¶¶ 15-18. Due to Plaintiff's advertising and promotional efforts, consumers readily identify products sold using the Chanel Marks as high-quality. *Id.* ¶ 20.

Plaintiff alleges that Defendant is using "counterfeit and confusingly similar imitations" of the Chanel Marks to initially attract consumers to Defendant's e-commerce stores, without authorization to use the Chanel Marks. *Id.* ¶¶ 23, 25. Defendant's actions are depriving Plaintiff and other third parties "of their right to fairly compete. . . " in the online marketplace with genuine products, degrading the goodwill value of the Chanel Marks, and increasing Plaintiff's costs to market its genuine products and to educate consumers about its brand. *Id.* ¶ 26. Defendant's infringing actions have directly and proximately caused Plaintiff harm. *Id.* ¶ 36. Plaintiff "is suffering irreparable injury" and "has no adequate remedy at law" available. *Id.* ¶¶ 34-35. Absent permanent injunctive relief, Plaintiff "and the consuming public will continue to be harmed while Defendant wrongfully earns a substantial profit." *Id.* ¶ 35.

According to the Declaration of Lora Moffatt in Support of Plaintiff's Motion for Entry of Default Final Judgment Against Defendant, prior to filing this action, Plaintiff "retained Invisible Inc, a licensed private investigative firm, to investigate the suspected sales of counterfeit [Plaintiff] branded products by Defendant." *See* Moffatt Decl. ¶ 10, ECF No. 14-1. Invisible Inc accessed each E-commerce Store Name, placed an order for the purchase of a product bearing and/or using counterfeits of, at least, one of the Chanel Marks at issue, and requested from Defendant be billed to an address in the Southern District of Florida. *See* Burns Decl. ¶ 4, ECF No. 5-4. Each order was processed entirely online and following the submission of each order, Invisible Inc documented the PayPal, Inc. ("PayPal") information for finalizing payment for the

products ordered to Defendant's payment accounts. *Id.* At the conclusion of the process, the detailed web pages Invisible Inc captured and downloaded reflecting Plaintiff's branded products offered for sale and ordered via Defendant's E-commerce Store Names were sent to Plaintiff's representative for inspection. *Id.* ¶ 4; Moffatt Decl. ¶ 11; Gaffigan Decl. ¶ 2, ECF No. 14-3.

Lora Moffatt, Plaintiff's Head of Intellectual Property, is in part responsible for Plaintiff's "trademark and anti-counterfeiting efforts in the United States" and is "trained to identify the distinctions between genuine [Plaintiff's] merchandise and counterfeit copies of the same." Moffatt Decl. ¶¶ 2-3. Plaintiff analyzed the detailed web page captures of the products offered for sale and ordered by Invisible Inc from Defendant via each of its E-commerce Store Names and determined each product was a "non-genuine, unauthorized" version of Plaintiff's product. *Id.* ¶¶ 12-13. Ms. Moffatt further confirmed that Defendant lacks authorization from Plaintiff to use the Chanel Marks in connection with Defendant's e-commerce stores. *Id.*

In its four-count Complaint, Plaintiff seeks damages and injunctive relief for Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I); False Designation of Origin Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II); Common Law Unfair Competition (Count III); and Common Law Trademark Infringement (Count IV). Compl. ¶¶ 1, 37-62. In the prayer for relief, Plaintiff seeks, among other things:

(1) a permanent injunction enjoining Defendant from manufacturing, advertising, or selling items using the Chanel Marks and enjoining Defendant and third parties with actual notice of the permanent injunction

from providing services in support of Defendant's infringing use, *id.* ¶ 63(a), (b), (c);

(2) an order allowing Plaintiff to request

(a) Defendant and the top level domain (TLD) Registry for each of the E-commerce Store Names, or their administrators, including backend registry operators or administrators, place the E-commerce Store Names on Registry Hold status for the remainder of the registration period, *id.* ¶ 63(e);
(b) canceling for the life of the current registration or transferring the E-commerce Store Names to Plaintiff's control, *id.* ¶ 63(f);

(3) authorizing Plaintiff to serve an injunction to request
(a) registrar(s) and/or the privacy protection service(s) for the E-commerce Store Names to disclose to Plaintiff the true identities and contact information for the registrants of the E-commerce Store Names, *id.* ¶ 63(g);
(b) the e-mail service providers permanently suspend the e-mail addresses connected with the infringing use, *id.* ¶ 63(h);

(4) an order requiring Defendant
(a) its agent(s) or assign(s), to assign all rights, title, and interest, to its E-commerce Store Names to Plaintiff, and if Defendant fails to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, *id.* ¶ 63(i);
(b) its agent(s) or assign(s), to instruct in writing all search engines to permanently delist or deindex the E-commerce Store Names, and if Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, *id.* ¶ 63(j);

(5) an order allowing Plaintiff to request the termination of any messaging services, e-commerce store names, usernames, and social media accounts, *id.* ¶ 63(k);

(6) an order requiring Defendant to file with this Court a report in writing, under oath setting forth in detail the manner and form in which Defendant has complied with the injunction, *id.* 63(l);

(7) an order
(a) for treble or statutory damages, *id.* ¶ 63(m);
(b) for an award of costs, attorney's fees, and investigative fees in the

action, *id.* ¶ 63(n);

(c) allowing Plaintiff to request that Defendant and its financial institutions identify, restrain, and surrender up to the total amount of the judgment to Plaintiff from accounts used in connection with the E-commerce Store Names, *id.* ¶ 63(o); and

(d) for an award of pre-judgment interest, *id.* ¶ 63(p); and

(8) the entry of an order allowing Plaintiff to request Defendant pay the cost to correct any incorrect public perception, *id.* ¶ 63(q).

## PROCEDURAL BACKGROUND

Plaintiff filed a Motion for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3), requesting that the Court enter an order allowing Plaintiff to serve Defendant through alternate means. *See* ECF No. 5. The Court entered an Order Granting Plaintiff's Motion for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3). *See* ECF No. 6. Plaintiff served Defendant through alternate means on March 9, 2026[1], making Defendant's response to the Complaint due by March 30, 2026. *See* Proof of Serv., ECF No. 9. Defendant did not respond to the Complaint or seek an extension of the time to respond before the deadline. Plaintiff filed a Request for Clerk's Entry of Default on March 31, 2026, and the Clerk thereafter entered default. ECF No. 10; ECF No. 11. The instant Motion for Entry of Default Final Judgment Against Defendant followed. ECF No. 14.

---

[1] Defendant, nordstfcmrcak.com a/k/a onlinestorec.shop a/k/a lastchanceo.shop, was served via its corresponding e-mail address or via onsite contact form by providing the URL address to the server page where the documents reside. Additionally, Defendant was notified that all documents filed in the case can be found posted on the website located at https://servingnotice.com/cn3WHm3/index.html.

## LEGAL STANDARDS

### A. Default Judgment

A court may enter a default judgment against a party who has failed to plead or otherwise defend an action. Fed. R. Civ. P. 55(a). "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quotation marks omitted). The defendant does not, however, admit facts that are not well-pleaded or conclusions of law. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). A court considering entering a default judgment must ensure that the pleading states a claim upon which relief can be granted. *Id.*

### B. Injunctive Relief

Under the Lanham Act, a court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a). The "remedy of choice for trademark and unfair competition cases" is injunctive relief "since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (quotation marks omitted). Injunctive relief is available even in a default judgment setting. *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1261-62 (S.D. Fla. 2016) ("Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction."). A court has "broad equity powers [that]

allow it to fashion injunctive relief necessary to stop the Defendants' infringing activities." *Tiffany (NJ) LLC v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 20-cv-60299, 2020 WL 4501770, at *6 (S.D. Fla. June 26, 2020).

To obtain permanent injunctive relief, a plaintiff must demonstrate that (1) the plaintiff has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) the issuance of an injunction is in the public's interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm." *El Palacio de Los Jugos, Inc. v. El Patio de Los Jugos USA Corp.*, No. 19-24642-CIV, 2020 WL 13358553, at *4 (S.D. Fla. Feb. 10, 2020) (alteration in original) (quotation marks omitted). Courts have found that "[a]n award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result" if a defendant is permitted to continue its infringing actions. *Id.* Further, a defendant "face[s] no hardship from an injunction prohibiting [its] unlawful activities." *Affordable Aerial Photography, Inc. v. Palm Beach Real Est., Inc.*, No. 20-81307-CIV, 2021 WL 2823270, at *6 (S.D. Fla. July 7, 2021).

**C. Damages**

Once a plaintiff has established a basis for liability, the court must determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). A court may conduct an evidentiary hearing before

entering default judgment if a hearing is needed to determine the amount of damages. Fed. R. Civ. P. 55(b)(2)(B). However, an evidentiary hearing is not a *per se* requirement of entry of default judgment. *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). No hearing is needed "where all essential evidence is already of record." *Id.* The court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007).

The court has "wide discretion in awarding statutory damages." *PetMed Express*, 336 F. Supp. 2d at 1219. "An award of statutory damages is appropriate despite a plaintiff's inability to provide actual damages caused by a defendant's infringement." *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1292 (S.D. Fla. 2016). Under the Lanham Act, a court may award a minimum of $1,000.00 and a maximum of $200,000.00 in statutory damages "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). "[I]f the court finds that the use of the counterfeit mark was willful," the court may award statutory damages of no more than $2,000,000.00 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id.* § 1117(c)(2). "A defendant's trademark infringement is willful when the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright." *Sream, Inc. v. Asat Inc.*, No. 18-14258-CIV, 2019 WL 1573337, at *4 (S.D. Fla. Apr. 11, 2019) (quotation marks omitted).

## ANALYSIS

Plaintiff's Complaint contains well-pleaded allegations of fact for each claim as detailed below. By its default, Defendant has admitted these well-pleaded allegations. *See Eagle Hosp. Physicians*, 561 F.3d at 1307.

### A. Liability

#### 1. Count I – Trademark Counterfeiting and Infringement

To prove liability under the Lanham Act for trademark counterfeiting and infringement, the plaintiff must show "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Abercrombie & Fitch Trading Co. v. Artemis Gesdy*, No. 19-CIV-60287, 2019 WL 4693557, at *2 (S.D. Fla. July 10, 2019) (quotation marks omitted). Plaintiff alleges the following in the Complaint:

> 14. [Plaintiff] is the owner of all rights in and to [certain] trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office . . . .
> . . . .
> 39. Defendant is promoting and otherwise advertising, selling, offering for sale and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the [Plaintiff's] Marks. Defendant is continuously infringing and inducing others to infringe the [Plaintiff's] Marks by using one or more of them to advertise, promote, offer to sell and/or sell counterfeit and infringing [Plaintiff's] branded goods.
> 40. Defendant's counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the consuming public as to the origin and quality of Defendant's Counterfeit Goods.
> 41. Defendant's unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to [Plaintiff] and are unjustly enriching Defendant with profits at [Plaintiff's] expense.
> . . . .

> 43. [Plaintiff] has suffered and will continue to suffer irreparable injury and damages while Defendant is unjustly profiting due to its above-described activities if Defendant is not permanently enjoined.

Compl. ¶¶ 14, 39-41, 43. These allegations adequately plead the elements of a claim under the Lanham Act of trademark counterfeiting and infringement. Plaintiff is entitled to default judgment against Defendant as to Count I.

**2. Count II – False Designation of Origin**

Liability under the Lanham Act for false designation of origin arises when "an entity . . . misrepresents the nature, characteristics, qualities, or geographic origin of its services in commercial advertising or promotion." *Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, Ecumenical Ord.*, 702 F.3d 1279, 1294 (11th Cir. 2012) (quotation marks omitted).

> [Courts] have interpreted this language to require a plaintiff to demonstrate that: (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) it has been, or likely will be, injured as a result of the false or misleading statement.

*Id.*

Plaintiff alleges the following in the Complaint:

> 31. Defendant's wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between [Plaintiff's] genuine goods and Defendant's Counterfeit Goods, which there is not.
> . . . .
> 47. Defendant has used in connection with its advertisement, offer for sale, and sale of its Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols

> and designs which falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to [Plaintiff's] detriment.
>
> 48. Defendant has authorized infringing uses of one or more of the [Plaintiff's] Marks in Defendant's advertisement and promotion of its counterfeit and infringing branded goods. Defendant has also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by it are genuine, non-infringing goods.
>
> 49. Defendant is using counterfeits and infringements of one or more of the [Plaintiff's] Marks to unfairly compete with [Plaintiff] and others for space within organic and paid search engine and social media results. Defendant is thereby (i) depriving [Plaintiff] of valuable marketing and educational space online, which would otherwise be available to [Plaintiff], and (ii) reducing the visibility of [Plaintiff's] genuine goods on the World Wide Web and across social media platforms.
>
> . . . .
>
> 51. [Plaintiff] has no adequate remedy at law and has sustained injury and damages caused by Defendant's conduct. Absent entry of an injunction by this Court, [Plaintiff] will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages, while Defendant is unjustly profiting.

Compl. ¶¶ 31, 47-49, 51. These allegations adequately plead the elements of a claim under the Lanham Act of false designation of origin. Plaintiff is entitled to default judgment against Defendant as to Count II.

### 3. Count III – Common Law Unfair Competition

Under Florida common law, the test for unfair competition is whether there is a likelihood of confusion. *Abercrombie & Fitch Trading Co.*, 2019 WL 4693557, at *3 ("Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida."). Plaintiff alleges the following in the Complaint:

> 54. Defendant is promoting and otherwise advertising, selling, offering for sale and distributing goods bearing and/or using counterfeits and infringements of one or more of the [Plaintiff's] Marks. Defendant is also using counterfeits and infringements of one or more of the [Plaintiff's] Marks to unfairly compete with [Plaintiff] and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.
> 55. Defendant's infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendant's e-commerce store as a whole and all products sold therein by its use of the [Plaintiff's] Marks.

ECF No. 1 ¶¶ 54-55. These allegations adequately plead a claim of unfair competition under Florida common law. Plaintiff is entitled to default judgment against Defendant as to Count III.

### 4. Count IV – Common Law Trademark Infringement

Under Florida common law, liability for trademark infringement follows the same analysis as does liability for trademark infringement under the Lanham Act. *Abercrombie & Fitch Trading Co.*, 2019 WL 4693557, at *3. Plaintiff alleges the following in the Complaint:

> 58. [Plaintiff] is the owner of all common law rights in and to the [Plaintiff's] Marks.
> . . . .
> 60. Defendant is promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of the [Plaintiff's] Marks.
> 61. Defendant's infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendant's Counterfeit Goods bearing and/or using the [Plaintiff's] Marks.

Compl. ¶¶ 58, 60-61. These allegations adequately plead a claim of trademark infringement under Florida common law. Plaintiff is entitled to default judgment as to Count IV.

**B. Injunctive Relief and Damages**

Plaintiff requests permanent injunctive relief and statutory damages against Defendant for trademark infringement under Count I. Mot. at 8-17. Plaintiff has limited its request for damages for Counts II through IV to the amount awarded under Count I. *Id.* at 18.

**1. Injunctive Relief**

Plaintiff has met the requirements to obtain a permanent injunction. First, Plaintiff has shown that it has suffered and will continue to suffer irreparable injury absent an injunction. *Id.* at 10-11. Plaintiff has identified certain marks – the Chanel Marks – to which Plaintiff holds U.S. trademarks. There is a strong likelihood of confusion between Plaintiff's genuine trademark use and Defendant's unauthorized use of the Chanel Marks on counterfeit goods sold and distributed in the marketplace. Without an injunction, Defendant will continue selling the infringing goods via its e-commerce Store Names thereby diluting Plaintiff's goodwill and rightful share of the Internet marketplace.

Second, there is no adequate remedy at law to alleviate Plaintiff's injury. Monetary damages alone will not suffice as, absent an injunction, Defendant will continue to infringe on the Chanel Marks with counterfeit goods. A monetary award will not cure Plaintiff's reputation and goodwill.

Third, prohibiting Defendant from using the Chanel Marks will not create a hardship for Defendant because it has no right to use the Chanel Marks. However, absent an injunction, Plaintiff will continue to suffer hardship from Defendant's sale

and marketing of infringing and counterfeit products.

Fourth, issuance of a permanent injunction against Defendant will serve the public interest. An injunction will prevent consumers from being misled and lessen confusion in the marketplace. The Court, therefore, recommends that the District Court enter a permanent injunction in favor of Plaintiff and against Defendant.

**2. Statutory Damages**

Plaintiff seeks statutory damages under 15 U.S.C. § 1117(c) for Count I and requests an award of $100,000 against Defendant. The record shows that Defendant copied and used the Chanel Marks to benefit from Plaintiff's goodwill in the marketplace. E.g., Compl. ¶¶ 23-24. Defendant admits through its default that such use was willful. *See id.* ¶¶ 28, 30. Plaintiff's request for statutory damages of $100,000 against Defendant is in line with the statutory damages awarded in similar cases. E.g., *Fanatics, LLC v. Individuals Bus. Entities, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 24-24920-Civ-Williams, 2025 U.S. Dist. LEXIS 97844, at *21 (S.D. Fla. May 22, 2025) *report & recommendation adopted*, 2025 U.S. Dist. LEXIS 102957 (S.D. Fla. May 30, 2025) (awarding the plaintiff $100,000.00 against each defendant based on at least one mark counterfeited and one type of good sold); *Malletier, v. 21646644,* No. 24-22195-Civ-Williams, 2025 U.S. Dist. LEXIS 7512 (S.D. Fla. Jan. 14, 2025) (awarding the plaintiff $100,000.00 against each defendant based on at least one mark counterfeited and one type of good sold); *see also MPL Commc'ns Ltd. v. Individuals, Bus. Entities & Unincorporated Ass'ns Identified on Schedule "A"*, No. 25-24517-Civ-Becerra, 2026 U.S. Dist. LEXIS 5297 (S.D. Fla. Jan. 12, 2026) (awarding

plaintiff $100,000.00 per trademark counterfeited per type of good offered for sale). The Court, therefore, recommends that the District Court award Plaintiff $100,000 in statutory damages against Defendant.

## RECOMMENDATION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Plaintiff's Motion for Entry of Default Final Judgment Against Defendant [ECF No. 14] be **GRANTED** and a Default Final Judgment and Permanent Injunction be entered against the Defendant nordstfcmrcak.com a/k/a onlinestorec.shop a/k/a lastchanceo.shop, an Individual, Business Entity, or Unincorporated Association.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**SIGNED** in Chambers, in Miami, Florida, on this 7th day of October, 2026.

Enjolique A. Lett

**ENJOLIQUE A. LETT**
**UNITED STATES MAGISTRATE JUDGE**

Copies Furnished to:
The Honorable Kathleen M. Williams
All Counsel of Record